Lee v. Bradley Mlodzik Mlodzik case number 242647 May it please the court. John Kellis on behalf of the Ability Warden Mlodzik. Your honors, this court should affirm the district court's judgment in order denying habeas corpus relief. The district court correctly concluded that the Wisconsin Court of Appeals did not decide contrary to or reasonably apply established federal law. The district court was correct and I'm here to ask that this court conclude the same. Certainly here we have Mr. Lee's, sorry, Mr. Lee's young blood traumatic claim. To the extent that, and this wasn't really, I guess, addressed during my hurt on the other side's argument, we recognize that there is a, I guess, the Wisconsin Court of Appeals interpretation of trombetta and young blood and this argument that this is contrary to young blood and trombetta based on the terms that the court uses and the test that it employs. And as we pointed out, I think Nichols recognizes, this court's decision in Nichols recognizes that that's not, I guess, contrary to, but even to the extent that this court maybe has a different interpretation of young blood and trombetta, even that would at most establish a circuit's interpretation of it that differs from the state courts and even that wouldn't necessarily make this contrary to Supreme Court authority here. Can we back up and understand exactly where you're going? We have a lot of deference we need to apply here. The ADEPA standard is not favorable to your opponent here. Isn't it shocking that state officials destroyed evidence saying, we don't want the defendant to be able to get it in discovery? You can trust that if there's one thing I'm here for today, it is not to commend law enforcement and the state actors that were involved in destroying this evidence. And given how it occurred, are we going to see a lot of these? Is this something that's going on left, right, and center in Wisconsin courts? I certainly don't think it is. As a former prosecutor, I certainly never saw it myself. I get that this is alarming. I understand why this gives this court pause. And I'm not here to defend the officers or the state actors that were involved in this. That's not my intention at all. Ultimately, though, this court is not tasked with deciding whether the officers did wrong here, whether there were better ways. And I know my partner on the other side has kind of laid out some of the other avenues that could have been taken by the state to protect these witnesses and make sure that, you know, short of destroying evidence. But, again, that's not what this court is tasked with doing, nor was that what the district court was tasked with doing. Ultimately, the question is whether that Wisconsin Court of Appeals decision that considered his arguments was contrary to an unreasonable application of U.S. Supreme Court's authority. And it wasn't. Ultimately, this question about whether there was a contrary, whether the decision was contrary to, I want to focus on what the Wisconsin Court of Appeals did here. Because as acknowledged in the reply brief, I mean, the Court of Appeals got to the same conclusion. It ultimately is operating under the position of there was a due process violation here based on the evidence destruction. So the supposedly differing tests that were used to arrive to get to that conclusion, the starting point was that the court recognized there was a problem. Really, the question was whether the remedy was appropriate here, whether that was an erroneous exercise of discretion. And looking at Youngblood and Trembetta, it's clear there's very little guidance presented or provided that guides courts as to how it is that you're supposed to craft that particular remedy. Now, I know that there's always going to be claims that dismissal is the only appropriate remedy. That's the only thing that can serve as an appropriate remedy. But it's not. And I think this case is an example of why that doesn't need to be done. I mean, the trial court here determined that there was a due process violation and ultimately decided that it wasn't going to dismiss the case, but it was going to preclude the state from calling these witnesses. But it allowed Mr. Lee to do so if he so chose. But without an adverse inference instruction. Without even a request for an absent or without such one. Certainly, that could have been presented. And maybe we don't know how that would have been handled by the circuit court. There's this notion that the circuit court was so steadfast on protecting the state. And I disagree. I mean, ultimately, the court allowed him to call these witnesses. And he had an opportunity, if he wished, to interview those witnesses. At least one of the witnesses was interviewed by a defense investigator as well. And as far as this Catch-22 that's alleged here, it really wasn't one. I mean, he could have called these witnesses. If they were to implicate him or claim that he was the shooter, they had additional subsequent interviews that were performed. They could have been impeached with that, in which they then also didn't implicate or name Mr. Lee as the shooter in that situation. The officers could have also been called. And then, I guess, even for the destruction of evidence in and of itself, I mean, if this evidence could have been presented without even mentioning the evidence destruction. If the defense wanted to get there to try to paint this as the state's trying to frame this man, they did these interviews and they destroyed it. I mean, I guess that then could be the justification for why the state would be able to explain why it was that this evidence was destroyed. But really, Mr. Lee kind of wanted to have his cake and eat it, too. He wanted to prevent, you know, he wants the jury, I guess, in a way to hear about the evidence destruction, but also not allow the state an opportunity to explain why that was done. But in the end, when you read the Wisconsin Court of Appeals decision, you see that there's a very thorough analysis about why it was that this particular remedy was not an erroneous exercise of discretion. And it lays out all the various considerations that it had here. And ultimately, given the fact that the Supreme Court has provided, you know, very little guidance, I guess, as to what the appropriate remedy in this situation should be, I think that when you look at how thorough the Wisconsin Court of Appeals reviewed this, the, I guess, lack of really firm details on when the remedy should be appropriate, I don't see how the district court could, or for this court could, for that matter, conclude that that was an erroneous or an unreasonable application of harm better or young blood. As far as Mr. Lee's Brady, or claim under Brady, again, the determination was not reasonable, was not unreasonable. The Wisconsin Court of Appeals concluded that even though this evidence was suppressed, that he failed to establish that the evidence was favorable to him or material to a determination of his guilt. And the court aptly supported that conclusion. The fact is, is that explained that this evidence, it wasn't as though there were allegations that these individuals named a different person, provided a description that was inconsistent with Mr. Lee. And also this, I guess, the red herring, if you will, this assertion that these witnesses must have said something that implicated Paul, otherwise police would not have went and arrested him. And again, I call it a red herring because it's clear from this record why it is they pursue Paul. Paul is, you know, altercation with the victim immediately before the shooting. He's captured on video fleeing from the club immediately after holding what appears to be a gun. This wasn't rocket science about why these officers went after this individual and went to interview him and suspected that he was the gunman. This speculative assertion that it must have been something that these individuals said that led them to that is unfounded. And quite frankly, we have a detective's testimony, sworn testimony, during the actual trial that explained when we met and met with Paul, I told him, I lied to him. I told him that there were all these individuals that were pointing the finger at him. He was adamant that it wasn't him. And the officer, the detective acknowledges at that time that no one had been, no one had implicated him at that point. So that goes to confirm and reaffirm that this wasn't a notion of, or this wasn't a situation in which individuals named a different person and that's the reason why they went and pursued Paul instead of Mr. Lee in this situation. Was Mr. Lee allowed to raise the point about Paul Lee's arrest during the  I know his theory, I mean, his trial theory was one of a third party perpetrator. He pointed the finger at Paul as being the individual who was the shooter and that it wasn't actually him. I believe that there, I'm sorry, I don't know if they specifically asked the question about whether Paul had been arrested, but that was the trial defense, was that it was actually Paul and not him that was the shooter. And I think that as far as the Brady determination of this not being exculpatory or impeaching, I've explained that. But I think the biggest thing here is the materiality analysis here. And the reasonable probability that the proceeding would have been different had evidence been disclosed. Again, evidence wasn't exculpatory. But I mean, I think looking at that evidence of guilt, I mean, we have seven or eight individuals who hear this confession or who hear him make statements. He could not help himself but tell, it seems like anyone who would listen, that he was the shooter. So even, I mean, I guess even if this evidence would have been gathered, I guess, under this Brady analysis, I mean, we have all of these individuals who hear him confessing to this shooting. And this isn't officers interviewing him, trying to put words in his mouth or anything like that. We just have many individuals who have come forward and without any clear incentive or motive to lie about this, had all pointed the finger and said, yes, he was the one who came or who acknowledged that he was the shooter. And we also know that he was there. So given the strength of the evidence case, particularly based on, again, his presence there, the many individuals who actually heard him confess to the crime as well, there isn't a reasonable probability of a different result in the proceeding had that evidence been disclosed. So in the end, I guess what I want to stress is that we're not here to defend what the police did. And I acknowledge that this could have been handled differently and should have been handled differently. But again, I reiterate that the question before this court is not whether police should have done something differently or even whether Mr. Lee's due process rights were violated by the destruction of that evidence, but whether this was an unreasonable application of Supreme Court authority. And the Wisconsin Court of Appeals decision was very thorough. It laid out the standards. It explained why it believed that the remedy chosen was not an erroneous exercise of discretion. And absent Supreme Court authority suggesting that that was improper or that case dismissal was the only appropriate remedy in this situation, under this standard, under federal habeas corpus review, the district court was correct to deny his petition. And I'm asking this court to affirm. With that, I will, unless the court has any additional questions, I'll yield my final minute. Thank you, Mr. Kelce. Thank you. Ms. Walsh, rebuttal. Thank you, Judge Lee. I'd first like to acknowledge that the district court in denying Mr. Lee's young blood claim focused on elements of Brady, saying that these interviews could not have been favorable or material. That is not an element of young blood. Young blood focuses on whether the exculpatory value of the evidence was apparent to the officers before the destruction. And here, that is what the trial court found. The trial court found that the officers knew the nature of the evidence before it was destroyed and actually went at length to say if this evidence was not potentially exculpatory, why would they have acted in all the different ways that they did regarding this evidence? I guess just so that we can streamline this for us, if we find that there was a young blood violation here, fast forward, the remedy that was provided by the court, what Supreme Court case did that go against? We would say young blood and Trumbetta itself, Your Honor. What would young blood or Trumbetta have required? That's back to what I was discussing about the general principle of these cases is that he provided a real remedy. And the district court here did not get to that issue of a remedy because it found that the evidence was not material or favorable and so no young blood violation. But we believe that a proper remedy here, we would ask that you reverse and remand and allow the district court to decide for the first time, what would be a proper writ in this incident because it has not yet had the opportunity to reach that issue. Going back to the trial court's remedy, I would like to elaborate on why, how the destruction of this evidence led that the remedy would be put Mr. Lee in a vulnerable position. Again, this is not a case where we're talking about some notes were destroyed, but the report that those notes were transferred into has survived or a transcript of these recordings survived, but the recordings themselves were gone. The officers destroyed everything. I would first say, did not follow procedure and did not have these records transcribed, uploaded into the evidence folder. They were kept on the officer's personal accounts, but then also obviously destroyed the one copy of what these witnesses said and the maps that they drew of where the shooter was moving. And so juxtaposing this, this evidence of what it could have said to what we had at trial, there was no eyewitness that said that they saw Mr. Lee with either a gun that night or that they saw him shoot him. So this was three eyewitnesses and the officers had testified that after after the evening that they spoke to these three witnesses, they went and arrested Paul because they had reason to suspect that Paul was a  And that is consistent with what we know of Paul having been directly in an altercation with the victim moments before the shooting, the victim was shot at a very close range to the head at most a few inches away. And my, my counselor here on the other side had mentioned that the seven confessional witnesses had no reason to lie. I would point the court that two of those witnesses were next to Paul Lee during this altercation and were on video fleeing the scene in the seconds after the shooting and one changed his clothes and discarded them in a nearby dumpster, which are not necessarily actions that of a completely innocent bystander. They were right there and they never testified that they saw Chong do it only about this later confessional and they were close friends of Paul's as well. Before I close, I would like just to say that Mr. Lee was not trying to have his cake and eat it too. He did not have the benefit of this evidence that was destroyed forever. He also did not get the benefit of talking about this destruction of evidence. If he availed himself of the trial court's remedy and brought up these issues, he was not getting the benefit of the jury inferring that this evidence would have been beneficial for him. Instead, he was going to be stuck with an unknown, an unknown of what the officers were going to say and unknown of what they had seen. And these other cases where defendants are, their young blood cases are remedied with an instruction. There, the state is not getting the opportunity to justify its actions. The point is if this evidence is destroyed forever and the defendant does not get to use it, a remedy has to give them something. And so a remedy that does not give them the benefit of it, but instead posed many risks of which he had no way to impeach the officers or the witnesses. He had no way to know what they would say or prepare. That is not a remedy at all. And that is why your honors, we are asking that you reverse and remand to the district court so that it may consider for the first time what a proper writ would be for Mr. Lee. Thank you very much. Thank you very much. Counsel, a particular thanks Ms. Walsh to you and your colleagues, Ms. Darnall and Mr. Morrell for taking this by recruitment and representing your client ably. Thank you very much. We'll take the case under advisement at this point.